**Rashaun J. MILLER, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 610, 2010.**

Supreme Court of Delaware.

Submitted: July 13, 2011.
Decided: Aug. 11, 2011.

Bernard J. O'Donnell, Esquire, Office of the Public Defender, Wilmington, Delaware, for appellant.

Maria T. Knoll, Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before HOLLAND, BERGER and RIDGELY, Justices.

HOLLAND, Justice:

The defendant-appellant, Rashaun Miller ("Miller"), was arrested and subsequently indicted by a Superior Court Grand Jury for multiple drug and weapons' offenses. Miller was found guilty of Possession with Intent to Deliver Heroin and Possession of a Firearm During the Commission of a Felony. He was sentenced to a total of ten years at Level V incarceration, followed by eight months at Level IV in a halfway house and two years of Level III probation.

The Superior Court denied Miller's motion to suppress. His convictions follow a stipulated trial. In this direct appeal, Miller argues that his warrantless seizure was not supported by either probable cause or a reasonable articulable suspicion of criminal activity because "the arresting police officers relied on information supplied by an unproven, unreliable and possibly unknown informant, which [was] not sufficiently corroborated with respect to the basis of the informant's information or independent police observation of any illegal activity." We have concluded that argument is without merit.

### Facts

In early January 2010, Detective Chris Popp ("Detective Popp") of the Delaware State Police Governor's Task Force (the "GTF"), received information from a cooperating individual ("informant"), regarding a drug delivery set for January 14 between 11:00 a.m. and 1:00 p.m. The cooperating individual was not a past-proven, reliable source of information. The informant said that he knew the individuals involved in the delivery. The informant told Detective Popp that thirty bundles of heroin would be delivered to a specific parking lot location in the Town Court Compton Townhouses in the City of Wilmington. Each bundle was supposed to contain thirteen bags of heroin. The informant further advised Detective Popp that the individuals delivering these bundles were two young, black males who would back their vehicle into one of four specific spaces in the parking lot to make the delivery. According to the informant, one man had darker skin than the other and one of the men went by the nickname "O".

Based upon the informant's information, at the given date and time, the GTF set up surveillance of the area, positioning unmarked police vehicles at both entrances to the parking lot. The GTF agents wore plain clothes covered with yellow flak jackets with clearly marked "State Police" lettering. The informant was also in the parking lot area and in constant communication with Detective Popp.

At approximately 11:38 a.m., a vehicle matching the informant's description, con-

taining two black males, one with a darker complexion than the other entered the parking lot. As previously predicted by the informant, the vehicle backed into one of the four specifically predicted parking spaces. The informant told Detective Popp over the telephone "[t]hey're in the parking lot right now waiting for me." The informant, who had been in direct telephone contact with Detective Popp the entire time, also confirmed that the GTF had identified the correct vehicle, a 2003 Infinity G35, which was being driven by Miller.

Detective Simpler placed his vehicle facing Miller's vehicle "nose-to-nose" so that it could not leave the parking space without striking the officer's vehicle. Detective Popp testified that the GTF members then approached to make contact with Miller, but he and the vehicle's other occupant immediately fled. The officers began yelling "Stop, State Police!" Detective Popp and Detective Simpler apprehended Miller almost instantly, as he was climbing over a fence. Detective Lanski chased and quickly apprehended the other occupant, Tavar Smith.

When Miller fled, he left the car door open. As Detective Popp approached Miller's vehicle he could see, in plain view, what appeared to be a large quantity of heroin leaning up against the center console and a handgun protruding from underneath the driver's seat. Those items were introduced into evidence without objection at Miller's stipulated trial.

### Superior Court Ruling

Miller filed a motion to suppress the evidence taken from his car as the fruit of his illegal seizure. In denying Miller's motion to suppress, the Superior Court found that his seizure by the police was supported by "reasonable, articulable sus-

picion" based on the "totality of the circumstances:" That ruling was, in part, as follows:

> The cooperating individual in this case gave fairly specific information regarding his former past dealing with the Defendants and description of them, however generic, were more than just two individuals. One had the nickname of "O" and they discussed the fact that they were two African–American males, one of lighter complexion than the other.
>
> He also gave a window, a narrow window, of two hours, I believe it was, for their time of arrival, not only the area, but the specific identifier range of one to three parking spaces where they would park based upon, apparently, past dealing.
>
> Further, he or she—
>
> I assume it was a he.
>
> —identified—not only gave the information to the officers ahead of time, was there and in direct communication, contemporaneous communication, by cell phone with the officers and identified the Defendant's vehicle as the one that was coming to make the deal containing the Defendants.
>
> And I also note that the officers observed that this was the only vehicle that had come into the parking lot in the past, I think, 15 minutes of receiving that phone call. There was, again, reasonable, articulable suspicion to make the stop.

### Standard of Review

This Court reviews the denial of a motion to suppress for an abuse of discretion.[1] To the extent that the trial judge's legal conclusions are at issue, however, the standard of appellate review is *de*

1. *Culver v. State,* 956 A.2d 5, 10 (Del.2008).

*novo* for errors in formulating or applying legal concepts.[2]

### Miller's Contention

At the hearing on his motion to suppress, the Superior Court, Miller initially argued that the police did not have a reasonable articulable suspicion to support his detention. In addition to that contention, Miller now also argues on appeal that the Superior Court erred by not engaging in a probable cause analysis to determine the appropriateness of his seizure. In support of his probable cause argument, Miller relies on the holdings in *Draper v. United States* [3] and *Tatman v. State*.[4] In *Draper,* the United States Supreme Court held that Draper's arrest was supported by probable cause and, therefore, the search incident to his arrest was also lawful.[5] In *Tatman,* this Court held that Tatman's warrantless arrest was supported by probable cause and the search of his vehicle was in accordance with the automobile exception to the warrant requirement.[6]

The facts and holdings in *Draper* and *Tatman* are not applicable in Miller's case. The issue to be decided in this appeal is whether Miller's seizure was proper, not whether there was probable cause for his arrest (*Draper*) and not whether the warrantless search of his vehicle (*Tatman*) was justified. The Superior Court correct-

ly determined that Miller was seized at the time his vehicle was blocked in by the officers.[7] Accordingly, this Court must determine, as the Superior Court did, whether Miller's seizure was supported by a reasonable articulable suspicion of criminal activity.

### Reasonable Articulable Suspicion

 It is well settled that police officers can stop an individual for investigatory purposes if they have a reasonable, articulable suspicion that the individual is committing, has committed, or is about to commit a crime.[8] To determine the existence of a reasonable, articulable suspicion, the totality of the circumstances must be considered "as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with an officer's subjective interpretation of those facts." [9]

 An informant's tip may provide reasonable suspicion for a stop and seizure where the totality of the circumstances, if corroborated, indicates that the information is reliable.[10] In making that determination, consideration must be given to the reliability of the informant, the specificity of the informant's tip, and the degree to which the tip is corroborated by indepen-

---

2. *Chavous v. State,* 953 A.2d 282 (Del.2008).

3. *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

4. *Tatman v. State,* 494 A.2d 1249 (Del.1985).

5. *Draper v. United States,* 358 U.S. at 314, 79 S.Ct. 329.

6. *Tatman v. State,* 494 A.2d at 1253.

7. *See also Stewart v. State,* 945 A.2d 595, 2008 WL 482310, *2 (Del. Feb. 22, 2008) (stating that seizure occurred when officers blocked in Stewart's vehicle).

8. Del.Code Ann. tit. 11, § 1902; *see also Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

9. *Woody v. State,* 765 A.2d 1257, 1263 (Del. 2001); *Jones v. State,* 745 A.2d 856, 861 (Del. 1999) (citing *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).

10. *Brown v. State,* 897 A.2d 748, 751 (Del. 2006) (citing *Tatman v. State,* 494 A.2d at 1251).

dent police surveillance and information.[11] The United States Supreme Court has emphasized the importance of not only specific facts and conditions existing at the time of the informant's tip but also whether the tip includes references to future actions that are not ordinarily easily predicted.[12]

### Supreme Court Precedents

In *Alabama v. White*,[13] the United States Supreme Court addressed the extent to which an informant's tip could provide the police with reasonable and articulable suspicion of criminal activity.[14] In that case, the police received an anonymous tip that the defendant would be leaving a particular apartment at a particular time to deliver cocaine. The informant stated that the defendant would drive a brown Plymouth station wagon with a broken taillight and deliver the cocaine in a brown attaché case to a location near Dobey's Motel.[15] The police placed the defendant's reported location of departure under surveillance and observed the defendant get into a car matching the description provided by the informant.[16] The police then followed the defendant along the most direct route to Dobey's Motel, and eventually stopped her and searched her car just short of the destination.[17] They found marijuana in the car and cocaine in a brown attaché case.[18]

In *White*, the Supreme Court concluded that the police sufficiently corroborated the informant's assertions by matching the description of the car and by observing behaviors that the informant predicted.[19] The Supreme Court noted that if police can corroborate predictive information regarding the defendant's movements and behavior, the informant's credibility is bolstered.[20] According to the Supreme Court, the prediction of "future behavior" demonstrates inside information—special familiarity with someone's affairs that the general public would have no way of knowing.[21] The Supreme Court concluded that because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that an informant with access to such information is likely also to have access to reliable information about that individual's illegal activities.[22]

Conversely, the United States Supreme Court has held that an anonymous tip providing no predictive information that the police may use to assess the reliability and knowledge of an informant is insufficient to constitute a reasonable articulable

11. *Id.; see also Alabama v. White*, 496 U.S. 325, 331, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) (stating that reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by the police and its degree of reliability with both factors—quality and quantity—being considered in the whole picture.).

12. *See Illinois v. Gates*, 462 U.S. 213, 245, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

13. *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

14. *Id.* at 327, 110 S.Ct. 2412.

15. *Id.*

16. *Id.*

17. *Id.*

18. *Id.*

19. *Id.* at 331, 110 S.Ct. 2412.

20. *Id.* at 332., 110 S.Ct. 2412

21. *Id.*

22. *Id.; see also Sierra v. State*, 958 A.2d 825, 830 (Del.2008) (stating that an informant's "credibility, reliability, and basis of knowledge" are all highly relevant in determining the value of his information.).

suspicion of criminal activity.[23] In *Florida v. J.L.*,[24] the Supreme Court held there was no reasonable articulable suspicion where police received an anonymous call reporting that a black male in a plaid shirt was carrying a gun at the train station.[25] In that case, the police responded to the train station and saw three black males, one of whom wore a plaid shirt.[26] Although police did not see the defendant engage in any suspicious or illegal activity, they proceeded to stop and search him for weapons.[27] The Supreme Court held that the anonymous call did not constitute a reasonable articulable suspicion because it did not contain predictive information[28] and did not provide any other basis for reliability in its assertion of illegality.[29]

### Reasonable Suspicion Established

■ In the present case, the informant told Detective Popp that two black males, one lighter in complexion than the other, would arrive at a specific parking lot between 11:00 a.m. and 1:00 p.m. to deliver bundles of heroin. He also said that when they arrived, they would back into one of four specific parking spots. Detective Popp saw a 2003 Infinity G35 pull into the designated parking lot carrying two black males, and watched it back into one of the four spots identified by the informant. Detective Popp then received contemporaneous confirmation from the informant by cell phone that the car they had observed back into the parking space was the correct one before he ordered his team to move in.

As in *White*, the informant presented information that predicted the actions and methods that Miller would employ. In *White*, the informant accurately predicted the time, method (defendant would deliver in a brown Plymouth, would carry drugs in a brown attaché case), place of origin (defendant's apartment), and destination of the delivery (Dobey's Motel). In this case, the informant accurately predicted the time (11:00 a.m.–1:00 p.m.), the method (would arrive in a vehicle and back into one of four parking spots), and the destination of the delivery (Town Court Compton Townhouses). Unlike the facts in *Florida v. J.L.*, here the informant accurately predicted the specific actions of Miller.

In this case, the record also reflects that the informant was more than an anonymous tipster. Anonymous tipsters generally make contact with the police by calling 911. This informant made contact with Detective Popp on multiple occasions, and even made contact with the police contemporaneous to the investigatory operation.[30] This suggests some sort of familiarity between the police and the informant. For these reasons, the informant's tip was more reliable than the information of a one-time anonymous caller.

The Superior Court properly denied Miller's motion to suppress evidence. The informant's ability to predict specific future behavior of the subjects demonstrated

---

**23.** *Florida v. J.L.*, 529 U.S. 266, 271, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) (stating that the police lacked necessary indicia of reliability that the caller had inside knowledge of illegal conduct sufficient to provide the police with the reasonable suspicion required before detaining the suspect).

**24.** *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).

**25.** *Id.* at 268, 120 S.Ct. 1375.

**26.** *Id.*

**27.** *Id.*

**28.** *Id.* at 271, 120 S.Ct. 1375.

**29.** *Id.* at 272, 120 S.Ct. 1375.

**30.** *See U.S. v. Copening*, 506 F.3d 1241 (10th Cir.2007).

his knowledge of inside information and illegal criminal activities.[31] We hold that the specific predictive information that was independently corroborated by the police officers constituted reasonable articulable suspicion justifying Miller's seizure.[32]

### Conclusion

The judgments of the Superior Court are affirmed.

---

**31.** *See Schramm v. State,* 366 A.2d 1185, 1189 (Del.1976) (reasonable inference from informant's detailed description of defendant's proposed criminal activity is that informant is speaking from personal knowledge).

**32.** *See Alabama v. White,* 496 U.S. at 332, 110 S.Ct. 2412; *see also Stewart,* 2008 WL 482310, at *2 (stating that information was sufficiently corroborated by the police in their surveillance and finding the individual at the exact place described by the informant.).