# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,               )
                                 )
                                 )
        v.                       )        Case No. 2207004139
                                 )
JAQUAN MASON,                    )
                                 )
        Defendant.               )

## OPINION

Submitted: March 29, 2023
Decided: April 6, 2023

On Defendant's Motion to Suppress

## GRANTED

Dominic A. Carrera, Jr., Esquire, Deputy Attorney General
    Department of Justice, Wilmington, Delaware
    Attorney for the State of Delaware

Thomas A. Foley, Esquire, Wilmington, Delaware
    Attorney for Defendant

1

Defendant has moved to suppress evidence seized from his residence on July 8, 2022, as well as any statements made following entry into the residence by the State Police.

## FACTUAL AND PROCEDURAL CONTEXT

Defendant Jaquan Mason is charged with four counts of Robbery First Degree, four counts of Wearing a Disguise During the Commission of a Felony, two counts of Conspiracy Second Degree, Tampering With Physical Evidence and Robbery Second Degree. The allegations involve four sets of robberies: May 1, 2022 (Royal Farms at 295 and Route 9); June 7, 2022 (PNC Bank Penn Mart Shopping Center); June 19, 2022 (Royal Farms at 295 and Route 9); and June 20, 2022 (Walgreens, Four Seasons Glasgow).

On July 6th, the State Police obtained warrant in the Justice of the Peace Court 2 to search a residence located at 180 Bunche Blvd, Wilmington, DE 19801, for evidence related to the June 7th PNC Bank robbery. The search warrant was executed on July 8th. Inside the residence, the State Police found what they believed was evidence from other robberies. The State Police obtained a second search warrant in the Justice of the Peace Court 11 on July 8th, before continuing the search.

Paragraph 11 of the July 6th search warrant states:

> *On June 21st, 2022 a search warrant was executed at the residence belonging to D2 Jinita Wright. During the execution of the search warrant two cellular devices belonging to D2 Wright were located and collected as evidence. Wright was*

2

*taken into custody without incident and transported to Delaware State Police Troop 6. A post-Miranda interview was conducted at which time D2 Wright implicated herself as the suspect vehicle owner and operator, as well as the individual responsible for hand-writing the demand note, removing the discarded firearm from the trash can and transporting the main bank robbery suspect to and from the scene of the crime. D2 Wright advised that she contacted her co-conspirator S1 Jaquan Mason, utilizing those cellular devices, prior to the robbery. D2 advised that she picked up S1 Jaquan Mason and his mother from their residence at 180 Bunche Blvd, Wilmington DE 1980. D2 Wright utilized Google Maps while your Affiant was present to locate and identify the correct residence. D2 Wright was able to describe the residence where S1 Mason resided because she had picked him up from that location on multiple occasions. An investigative inquiry was performed linking S1 Jaquan Mason and his mother Cynthia Mason to 180 Bunche Blvd as recently as 6/18/2022 (Cynthia Mason listed as homeowner in police report 32-22-45770) and 3/16/2022 (Jaquan Mason listed as resident in police report 32-22-19513). Traditional surveillance was established at this location however due to the location of the residence no occupants were able to be observed.*

## STANDARD OF REVIEW

Probable cause to obtain a search warrant is based on the totality of the circumstances. These circumstances must be set forth in the four corners of the affidavit supporting the warrant. The reviewing judicial officer must determine whether there is a fair probability that evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). Probable cause that a crime has been committed is not sufficient. The affidavit must state facts

3

supporting a reasonable belief that the property sought will be found in a particular place. *Taylor v. State*, 260 A.3d 602, 613 (Del. 2021).

An informant's tip can provide the basis for reasonable suspicion or probable cause. *Alabama v. White*, 496 U.S. 325, 329 (1990). The reviewing court must consider the credibility of the tip. The less credible the informant, the more corroboration is required to determine reliability. *See Miller v. State*, 25 A.3d 768, 721-22 (Del. 2011). Recent Delaware cases have emphasized the need for verification and corroboration of the asserted connection to the Defendant and/or property to be searched. *See State v. Stevens*, 2023 WL 2127335, at *1-4 (Del. Super.)(motion to suppress denied where information from two confidential informants corroborated by observations of police officers of defendant's vehicle and controlled drug buy from defendant's motel room); *State v. Spady*, 2018 WL 4896335, at *3-4 (Del. Super.) (motion to suppress granted where police failed to verify informant's participation in controlled drug buy in a building containing five separate units).

## ANALYSIS

In this case, the informant was an accomplice. An accomplice confession that also incriminates a co-defendant "ought to be received with suspicion, and with the very greatest care and caution…." *Lilly v. Virginia*, 527 U.S. 116, 131 (1999).

The State argues that the affidavit sufficiently provides the following corroboration:

Corroboration of Criminal Activity

1.      Ms. Wright's vehicle arriving to and leaving from the bank prior to and shortly after the robbery determined by surveillance.

2.      Social media posts from Ms. Wright's account linking her to the Robbery Vehicle close in time to the robbery.

3.      Surveillance that captured Ms. Wright driving to and from the robbery and collecting an unknown item from the trashcan that the Defendant discarded an item in directly after the robbery.

4.      The fingerprint on the robbery demand note belonging to Ms. Wright showing her involvement with Defendant in the robbery.

5.      Surveillance shows Defendant throw an item out in the trash can immediately after the Robbery and Ms. Wright collects the item shortly thereafter.

6.      Surveillance shows the items appearing consistent with a firearm.

7.      Ms. Wright's statement admitting to her involvement in the robbery confirming that she is the female on surveillance driving the car, retrieving an item from the trash can.

8.      Ms. Wright's statement that Defendant was the other suspect seen entering the bank and handing over the demand note.

9.      Ms. Wright's statement that the item she retrieved from the trashcan was in fact a firearm that had been placed there by Defendant.

10.     Ms. Wright's statement that she utilized her cell phone to communicate with Defendant leading up to the Robbery.

11.     Ms. Wright's statement that she transported Defendant to and from the robbery scene after she collected the firearm.

5

12.    That the firearm used in the robbery was not located in Ms. Wright's residence at the time a search warrant was executed but that police did locate two cell phones.


Corroboration of the Defendant's Residence

1.    Police conducted extensive surveillance on Ms. Wright prior to her apprehension and determined there to be no male co-conspirator living with her or within her household.

2.    Ms. Wright confirmed with police that she picked the Defendant and his mother up from his residence prior to transporting Defendant to the Robbery scene.

3.    Ms. Wright stated that she had picked up the Defendant from his residence on numerous prior [occasions].

4.    Ms. Wright Was able to accurately describe what Defendant's residence looked like.

5.    Police confirmed that recently Defendant and his mom resided at that residence based on served police complaints linking Defendant and his mother to that residence.

6.    Finally, police attempted to further corroborate the residence by establishing traditional surveillance but were unsuccessful.

7.    That the firearm used in the robbery that police were requesting a search for was not located in Ms. Wright's residence at the time a search warrant.


The Court notes that this list refers to "Defendant" on surveillance. However, Defendant is not identifiable on the films. Additionally, Paragraph 2 in the Application and Affidavit describes "a dark-skinned black male, 5'6" to 5'6 1/2", in his mid-twenties wearing a navy-blue bucket hat and gray hooded

6

sweatshirt." However, nothing in the Affidavit states that Defendant matches that description. The sole connection between the information in the Affidavit and the Defendant is the accomplice statement that Defendant is the person referred to as "S1." The vehicle was the property of the accomplice. The place to be searched was the home of Defendant, not the accomplice.

The credibility of the accomplice is questionable. Throughout her post-arrest interview, her story about the events changed - from denial of all culpability to admission of some participation in the crime. The accomplice denied key aspects of her involvement that contradict surveillance footage - such as the accomplice retrieving a firearm from the dumpster in which it was placed immediately following the robbery. However, her identification of Defendant as a co-conspirator did not waver.

The Court finds that the Application and Affidavit fail to provide probable cause supporting issuance of the search warrant. The co-conspirator's statement that her accomplice was Defendant is uncorroborated.

**THEREFORE,** Defendant's Motion to Suppress is hereby **GRANTED.**

**IT IS SO ORDERED.**

*/s/ Mary M. Johnston*
The Honorable Mary M. Johnston
