HERRMANN, Chief Justice:
 

 We here consider the validity of a war-rantless search and a warrantless arrest— specifically, whether the police had sufficient probable cause to justify such actions and, if so, whether the police executed the warrantless search in accordance with Constitutional standards, as set forth by the United States Supreme Court. We find that the police had sufficient probable cause to justify both the warrantless search and the warrantless arrest. And, we find that the police executed the war-rantless search in a manner consistent with Fourth Amendment guarantees. Accordingly, we affirm.
 

 I.
 

 Based on his own observation, as well as upon information received from several reliable informants, police Detective James Stallings knew the defendant, Allan M. Tai-man, to be a heroin dealer. From the same sources, Detective Stallings knew that the defendant usually obtained the drugs in New York, driving them back to Wilmington late at night.
 

 However, a new informant provided the information which led to the arrest here involved. One afternoon in August 1983, the new informant told Detective Stallings that the defendant and a “Jeffrey Bradley” were going to New York that night to purchase heroin and would be returning to Wilmington in what the informant believed to be a white Buick owned by William Caulk. The detective was personally familiar with both Caulk and his car, having seen both at the 106 E. 22nd Street residence where Caulk and the defendant lived. Detective Stallings verified the “tip” by calling two informants who had provided reliable information in the past. •
 

 Based on this information, the Municipal Court issued a search warrant for a vehicle described as a white four-door Buick owned by William Caulk, and occupied by Jeffrey Bradley and the defendant. Detective Stallings was not able to obtain the vehicle’s registration number until later that evening, well after the warrant was issued. He relayed the license plate number to police officers who were waiting at strategic points to intercept the vehicle. Detective Stallings also learned that the make of Caulk’s car was an Oldsmobile and not a Buick.
 

 About 10:40 p.m., Detective Stallings again talked with the primary informant. The informant said that Bradley would not be in the car; instead, a man identified only as “Tony” would be accompanying the defendant. Despite this revised report, the police did not attempt to obtain a new
 
 *1235
 
 warrant. Due to the lateness of the hour, the police knew that they did not have enough time in which to obtain a warrant incorporating these changes.
 

 Detective Stallings then went to the Delaware Memorial Bridge to await the car’s arrival. The police officers spotted the vehicle at about 11:20 p.m. After the ear was stopped, Detective Stallings recognized the defendant at the wheel. Two other individuals were in the car. They were identified as Tony Ross and Arthur Grimes. The vehicle was a white four-door Oldsmobile owned by William Caulk.
 

 The police immediately ordered the three individuals out of the car and arrested them for possession of heroin. At that point, Detective Stallings saw Ross drop two glass vials. Once the detective had handcuffed Ross, he retrieved the vials finding a white powdery substance inside.
 

 The police transported the vehicle and its occupants to a firehouse in Wilmington, where the car was searched. Detective Stallings noticed that the back seat on the passenger-side of the car was slightly askew. When the police removed the seat cushion, they uncovered a brown paper bag. Inside the bag, they found 197 glas-sine packets of heroin.
 

 At a suppression hearing, the defendant challenged the introduction into evidence of the heroin which the police uncovered during their search of the vehicle. The Trial Court denied the motion to suppress, finding the search justified as one incident to a lawful arrest.
 

 In a non-jury trial, the defendant was found guilty of several offenses related to trafficking in heroin. He was sentenced to a minimum mandatory sentence of ten years imprisonment and fined $150,000, $149,000 of which was suspended.
 

 The defendant appeals.
 

 II.
 

 The State concedes that the search warrant was invalid. Therefore, in order to justify the warrantless search, there must have been probable cause sufficient to satisfy one of the recognized exceptions to the warrant requirement.
 

 We find that the police had sufficient probable cause to justify a search of the vehicle under the automobile exception to the warrant requirement.
 

 So long as the police have probable cause to believe that an automobile is carrying contraband or evidence, they may lawfully search the vehicle without a warrant.
 
 Carroll v. United States,
 
 267 U.S. 132, 153-54, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925).
 
 See also United States v. Johns,
 
 — U.S. -, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985);
 
 United States v. Ross,
 
 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).
 

 In this case, the police clearly had sufficient probable cause to believe that the car driven by the defendant was carrying contraband. Under the standard which the United States Supreme Court recently set forth in
 
 Illinois v. Gates,
 
 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), an informant’s tip may form the basis of probable cause where the “totality of circumstances” would lead a magistrate to conclude that the information is reliable.
 
 Id.
 
 at 233, 103 S.Ct. at 2329. Whereas the former two-pronged test of
 
 Aguilar v. Texas,
 
 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and
 
 Spinelli v. United States,
 
 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), required a showing of both (1) the basis for the informant’s knowledge, and (2) facts sufficient to establish either the informant’s veracity or the reliability of the information supplied, under
 
 Gates,
 
 if the informant’s tip can be corroborated, it may form the basis for probable cause even though nothing is known about the informant’s credibility.
 
 Illinois v. Gates, supra
 
 462 U.S. at 242-243, 103 S.Ct. at 2334-2336.
 

 In this case, though the warrant was invalid as a result of several inaccuracies therein, it did not fail for want of probable cause. As required by
 
 Gates,
 
 we accord deference to the magistrate’s determination of probable cause, and find no error in
 
 *1236
 
 his conclusion.
 
 Illinois v. Gates, supra
 
 at 237, 103 S.Ct. at 2331.
 

 The attendant facts and circumstances in the present case fully support the reliability of the informant’s tip. Detective Stall-ings corroborated the new informant’s tip by' consulting with other informants who had proven reliable in the past.
 
 See Illinois v. Gates, supra
 
 at 242, 103 S.Ct. 2334. In addition, Detective Stallings personally knew of certain facts which corroborated the informant’s tip — he was familiar with the vehicle, its owner, the defendant’s prior involvement in heroin trafficking and the procedure for transporting the heroin back from New York late at night.
 

 Moreover, by the time the search actually took place, the police had before them additional facts which they had not been able to submit to the magistrate in support of their application for a warrant. Though the informant incorrectly identified the car’s make, by the time the search actually took place, the police knew the license number and make of the car, as well as the identity of two of the car’s occupants.
 

 Based on all of this information, there was sufficient probable cause to justify the search of the vehicle.
 

 Though the police had probable cause to search the vehicle, we next consider whether the scope of such search exceeded that permitted by the Fourth Amendment.
 

 The United States Supreme Court recently considered this question in a case which presented facts very similar to the ones at issue here. In
 
 United States v. Johns, supra,
 
 United States Customs officials stopped two trucks which they had probable cause to believe were carrying marijuana. After the suspects had been removed from the trucks, the Customs officials took the two trucks to Drug Enforcement Administration (DEA) headquarters. Two packages, wrapped in dark green plastic and sealed with tape, were removed from the trucks and placed in a DEA warehouse. Three days later, Customs officials opened the packages without a search warrant.
 

 In
 
 Johns,
 
 the United States Supreme Court upheld the validity of the entire search, reaffirming the approach it had previously taken in
 
 United States v. Ross, supra.
 
 Following
 
 Ross,
 
 the Court noted that “ ‘[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.’ ”
 
 United States v. Johns, supra
 
 — U.S. at -, 105 S.Ct. at 885 (quoting
 
 United States v. Ross, supra
 
 456 U.S. at 825, 102 S.Ct. at 2172).
 

 To the contrary, the defendant contends that
 
 Arkansas v. Sanders,
 
 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), governs in the instant case. We disagree.
 

 In
 
 Arkansas v. Sanders,
 
 the police had probable cause to search a suitcase carried by a drug courier. Upon leaving the airport, the courier entered a taxi, placing his luggage in the trunk. Several blocks from the airport, the police stopped the taxi. At the officers’ request, the driver opened the trunk. Instead of obtaining a warrant, the police relied on the automobile exception to immediately search the suitcase. Though the Court in
 
 Sanders
 
 found that the automobile exception could not support the war-rantless search of the luggage, the
 
 Ross
 
 ease has limited that holding to cases in which there is probable cause to search only a container and not the entire vehicle.
 
 United States v. Ross, supra
 
 456 U.S. at 824, 102 S.Ct. at 2173. Hence, the defendant’s reliance on
 
 Sanders
 
 is misplaced because here the police had probable cause to search the entire vehicle, and not merely a specific container they knew to be located therein.
 

 Finding that
 
 Ross
 
 and
 
 Johns
 
 apply in this case, we conclude that, because the police had probable cause to search the entire vehicle, they were also justified in conducting a warrantless search of both the vehicle and the paper bag they found underneath the back seat.
 

 The fact that the police took the vehicle to a firehouse and there conducted the search does not alter our conclusion.
 

 
 *1237
 
 Once again, we refer to the
 
 Johns
 
 case. Holding that the officials acted properly in returning to the DEA headquarters before searching the trucks, the Court in
 
 Johns
 
 noted:
 

 There is no requirement that the war-rantless search of a vehicle occur contemporaneously with its lawful seizure.
 
 Texas v. White,
 
 423 U.S. 67, 68 [96 S.Ct. 304, 305, 46 L.Ed.2d 209] (1975)
 
 (per curiam ); Chambers v. Maroney,
 
 399 U.S. 42, 52 [90 S.Ct. 1975, 1981, 26 L.Ed.2d 419] (1970). “[T]he justification to conduct such a warrantless search does not vanish once the car has been immobilized.”
 
 Michigan v. Thomas,
 
 458 U.S. 259, 261 [102 S.Ct. 3079, 3081, 173 L.Ed.2d 750] (1982)
 
 (per curiam).
 
 A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrant-less search.
 
 Id.,
 
 at 261-262 [102 S.Ct. at 3081]; see also
 
 Florida v. Meyers
 
 466 U.S. [-] [104 S.Ct. 1852, 80 L.Ed.2d 381] (1984).
 

 United States v. Johns, supra
 
 — U.S. at -, 105 S.Ct. at 885. Therefore, the police officers in this case did not violate the defendant’s Fourth Amendment rights by removing the vehicle to the firehouse and conducting the search there.
 

 Accordingly, we find that the search here involved, and the scope thereof, were fully justified under the automobile exception to the warrant requirement. To the extent that the Trial Judge denied the defendant’s motion to suppress on the grounds that the search was incident to arrest, he committed harmless error.
 

 * * * * * *
 

 As a further ground of appeal, the defendant contends that his warrantless arrest was unlawful. We find no merit in this contention.
 

 Pursuant to 11
 
 Del.C.
 
 § 1904(b)(1),
 
 [1]
 
 a police officer may arrest an individual without a warrant where the officer “has reasonable ground to believe that the person to be arrested has committed a felony -” 11
 
 Del.C.
 
 § 1904(b)(1).
 
 See Gamer v. State,
 
 Del.Supr., 314 A.2d 908, 910 (1973).
 
 See also Gerstein v. Pugh,
 
 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975);
 
 Beck v. Ohio,
 
 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964);
 
 Brinegar v. United States,
 
 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). This Court has construed “reasonable ground” to mean “probable cause.”
 
 Thomas v. State,
 
 Del.Supr., 467 A.2d 954, 957 n. 3 (1983). In this case, the same probable cause which justified the search of the vehicle also justified the war-rantless arrest. Based on the totality of circumstances, the police had reasonable ground to believe that the defendant had committed a felony. Therefore, they acted well within their statutory authority in arresting the defendant without a warrant.
 

 ******
 

 Affirmed.
 

 [1]
 

 . 11
 
 Del.C.
 
 § 1904(b)(1) provides:
 

 (b) An arrest by a peace officer without a warrant for a felony, whether committed within or without the State, is lawful whenever:
 

 (1) He has reasonable ground to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed;