# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| | ) | |
| v. | ) | I.D. No. 1912024010 |
| | ) | |
| | ) | |
| MATTHEW PEART, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

*Upon Consideration of Defendant's Revised Motion to Suppress*,
**DENIED.**

Erika R. Flaschner, Esq., Deputy Attorney General, Department of Justice, Wilmington, Delaware. *Attorney for the State of Delaware*.

James J. Haley, Jr., Esq., Ferrara & Haley, Wilmington, Delaware. *Attorney for Defendant*.

**RENNIE, J.**

## I.    INTRODUCTION

Defendant, Matthew J. Peart ("Defendant"), filed this Motion to Suppress to challenge the admissibility of evidence resulting from a search of his trash and of his residence.  For the reasons that follow, Defendant's Motion to Suppress is **DENIED**.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On the week of November 18, 2019, the Newark Police Department received information from a confidential source that Defendant was selling cocaine and living at 193 Madison Drive in Newark.  This address was confirmed to be Defendant's residence.

On Monday, December 9, 2019, Corporal Kendrick and Corporal Rivers responded to an alley behind Defendant's residence and observed Defendant's trash can situated in a position to be picked up from a waste management company.[1]  The police conducted a search of the trash can and retrieved several bags of garbage from inside the can.  Located inside the trash bags were "approximately twenty-five dryer sheets, hundreds of clear plastic sandwich bags with one corner cut away, and multiple corners and cut away baggie tops with a white powdery residue."[2]  The residue later field tested positive for cocaine.[3]  The

---

[1] D.I. 15 at 2 [hereinafter "State's Resp."].

[2] State's Resp., Exhibit B [hereinafter "Search Warrant Aff."]. Based upon the officers' training and experience, the collective presence of these items are indicative of drug dealing activity.

police also located three receipts in the trash with the name "Matthew" or "Matthew Peart."[4]

Based on these facts, the police filed a search warrant application and affidavit which was signed by a magistrate on December 9, 2019.[5] The next day, the Newark Police Department executed a daytime search warrant at 193 Madison Drive, Newark, 19711. From this search, police recovered $23,700 USC, drug paraphernalia, and approximately fifty grams of cocaine. Defendant was charged with Drug Dealing (Cocaine) and Aggravated Possession (Cocaine), in violation of 16 *Del. C.* §§ 4752(1) and 4752(3).

On September 16, 2020, Defendant filed this Motion to Suppress.[6] On November 23, 2020, the State filed its Response.[7] This Court heard oral argument on December 11, 2020.[8] This matter is ripe for review.

## III.  STANDARD OF REVIEW

Delaware Superior Court Criminal Rule 12(b)(2) permits a defendant to file a motion to suppress evidence prior to trial.[9] When a defendant challenges the validity of a search warrant on a motion to suppress, "the defendant bears the

---

[3] State's Resp. at 3.
[4] State's Resp. at 3.
[5] *See generally* Search Warrant Aff.
[6] D.I. 13 [hereinafter "Def.'s Mot."].
[7] State's Resp.
[8] D.I. 14.
[9] Super. Ct. Crim. R. 12(b)(2).

3

burden of establishing that the challenged search or seizure was unlawful."[10]  This

burden is by a preponderance of the evidence.[11]  The Fourth Amendment mandates

that "no warrants shall issue, but upon probable cause."[12]  The Fourth Amendment

to the United States Constitution and Article 1, § 6 of the Delaware Constitution

protects people from such seizures.[13]

## IV.   CONTENTIONS OF THE PARTIES

Defendant argues that, because his trash can was located at the end of his

driveway when it was seized, it was within the curtilage of his private property,

and thus was subject to greater privacy protection against search and seizure.[14]  In

the alternative, Defendant argues that if the Court finds that Defendant's trash can

was not located within the curtilage of his property, then the Court should revisit

*State v. Ranken* ("*Ranken*")[15] and conclude that Delawareans have a reasonable

expectation of privacy in their trash, which is not relinquished when they place

their trash at the edge of their property for pick up.

In opposition, the State presents three arguments.  First, the State argues that

Defendant's garbage was not located within the curtilage of his residence.  Second,

it argues that Defendant had no reasonable expectation of privacy in his garbage.

---

[10] *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. 2005) (citations omitted).
[11] *State v. Preston*, 2016 WL 5903002, at *2 (Del. Super. Sept. 27, 2016).
[12] *See* U.S. Const. amend. IV.
[13] *See* Del. Const. art. I, § 6; *see also State v. Moore*, 997 A.2d 656, 663 (Del. 2010) ("The right of Delaware citizens is further secured by Article I, § 6 of the Delaware Constitution.").
[14] Def.'s Mot. at 3-4 (citing *Collins v. Virginia*, 138 S. Ct. 1663 (2018)).
[15] 25 A.3d 845 (Del. Super. 2010), *aff'd,* 21 A.3d 597 (Del. 2011).

Third, the State asserts that the warrant was supported by probable cause.

## V. DISCUSSION

### A. Defendant's Garbage Can Was Located Outside of the Curtilage of His Residence

The Court finds that Defendant's garbage can was located outside the curtilage of his residence. In *United States v. Dunn*,[16] the United States Supreme Court ("U.S. Supreme Court") outlined the following factors to assess curtilage: (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is within an enclosure surrounding the home; (3) how the resident uses the area; and (4) the efforts undertaken by the resident to protect the area from observation by people passing by.[17] This Court considers these factors here in turn.

First, although the garbage can was within close proximity to the residence— where the driveway at issue is short (just longer than a four-wheel vehicle)— it was placed far enough away from the house to reasonably demonstrate an intent to be picked up by waste management. The driveway connects to an alley which is utilized by the City of Newark to collect garbage on Mondays.

Second, the garbage was not within an area of enclosure surrounding

---

[16] 480 U.S. 294 (1987).
[17] *Id.* at 301.

Defendant's residence. Defendant does not argue that any such enclosure existed.

Third, the area in which the garbage can was placed was likely used for nothing more than to enter and leave the residence— outside of garbage placement for pick up. The State has posited that "[t]he alley is utilized by the City of Newark to collect trash from Madison Drive residents on Monday[s]."[18] Although the Court does not assume this is the exclusive use of that area, Defendant does not raise any arguments to suggest that the area is otherwise used in such a way to be considered part of the curtilage of his residence.

Fourth, the Court finds that Defendant failed to take any steps to protect his garbage from the public view once he placed the receptacle at the end of his driveway for the purposes of trash collection. Thus, consideration of the *Dunn* factors leads to the conclusion that the trash can was outside the curtilage of Defendant's residence. For this reason, the Court finds that the Newark Police Department was not required to obtain a warrant prior to conducting a search of the garbage can's contents.

## B. Defendant Did Not Have a Reasonable Expectation of Privacy In His Garbage

The Court next considers whether Defendant had a reasonable expectation of privacy in his garbage. The U.S. Supreme Court has held that the U.S. Constitution does not provide for a reasonable expectation of privacy with regard

---

[18] State's Resp. at 6.

to trash outside the curtilage of the property.[19] "The searches and seizures provision in the Delaware Constitution preceded the adoption of the Fourth Amendment and has been held to provide greater protection than those afforded by the United States Constitution."[20] However, even with these greater protections, Delaware case law establishes that the "warrantless search of trash containers left curbside on a public sidewalk is permissible under both the United States and Delaware Constitutions."[21] This Court upholds Delaware's longstanding precedent here.

In *State v. Ranken*,[22] the Superior Court denied a motion to suppress in connection with the search of a defendant's trash can. In doing so, the Court found that because "[defendant's] trash was left in an area accessible to the public, the police were permitted, under the Fourth Amendment, to search and seize the three white trash bags located in a dark colored trash can on the public sidewalk in front of Ranken's address."[23] In reaching its holding, the Court considered case law from Delaware,[24] and case law from other jurisdictions,[25] along with precedent

---

[19] *See Dunn*, 480 U.S. 294.

[20] *State v. Ranken*, 25 A.3d 845, 853 (Del. Super. 2010), *aff'd,* 21 A.3d 597 (Del. 2011) (citing *Jones v. State*, 745 A.2d 856, 863 (Del. 1999)).

[21] *State v. Guardarrama*, 2016 WL 7235694, at *5 (Del. Super. Dec. 14, 2016), *aff'd,* 179 A.3d 865 (Del. 2018).

[22] 25 A.3d 845 (Del. Super. 2010), *aff'd,* 21 A.3d 597 (Del. 2011).

[23] *Id.* at 852.

[24] *See Jones v. State*, 745 A.2d 856 (Del. 1999); *see also State v. Dorsey*, 1997 WL 528273 (Del. Super. Aug. 1, 1997); *see also State v. Grossberg*, 1998 WL 283491 (Del. Super. Mar. 18, 1998).

established by the U.S. Supreme Court.[26]

After consideration of the expansive case law from multiple jurisdictions, the Court concluded that "[t]wenty-two states have found no constitutional violation[,]" in connection with the search of trash cans outside of a defendant's curtilage.[27] The Court also found that although "[f]our states ruling on this issue have ruled [that] a constitutional violation occurred[,]" such rulings were unpersuasive in comparison with the "overwhelming majority[.]"[28]

In *Ranken*, the Court relied on the U.S. Supreme Court's decision in *California v. Greenwood*, which held that "a warrantless search of trash does not violate the Fourth Amendment."[29] Similarly, this Court finds that the warrantless search of Defendant's trash can, located outside the curtilage of his residence, does not violate the Fourth Amendment.

Even when considering the issue under the heightened protections of the Delaware Constitution, the *Ranken* Court still found no constitutional violation for a warrantless search of trash under these circumstances. The Court aptly

---

[25] *See State v. DeFusco*, 224 Conn. 627 (1993); *see also Perkins v. State*, 197 Ga. App. 577 (1990); *see also State v. Hempele*, 120 N.J. 182 (1990); *see also Commonwealth v. Edmunds*, 526 Pa. 374 (1991); *see also Commonwealth v. Bagley*, 408 Pa. Super. 188 (1991); *see also State v. Sampson*, 362 Md. 438 (2001); *see also Commonwealth v. Pratt*, 407 Mass. 647 (1990); *see also State v. Hauser*, 342 N.C. 382 (1995).

[26] *See California v. Hodari D.*, 499 U.S. 621 (1991); *see also California v. Greenwood*, 486 U.S. 35 (1988); *see also Unites States v. Leon*, 468 U.S. 897 (1984); *see also Katz v. United States*, 389 U.S. 347 (1967) (Harlan, J., concurring).

[27] *Ranken*, 25 A.3d at 860–61.

[28] *Id.*

[29] *Id.*

recognized that, although it is "regrettable," the standard of reasonable expectation of privacy has lessened over time.[30] It reasoned that "reasonable people must or should have a lessened expectation of privacy in their trash[.]" "[T]he expectation of privacy is no longer reasonable" as it pertains to personal items placed into the trash or garbage.[31]

Defendant asks this Court to reconsider the established holding in *Ranken* on this issue. However, in reviewing *Ranken*, this Court emphasizes that *Ranken*'s holding was formulated after analyzing a multitude of cases that considered this issue and in the context of the current epoch in which the expectation of privacy in one's trash has all but disappeared. Indeed, as stated in *Ranken,* and re-emphasized in this opinion:

> The media is replete with warnings to people not to put personal items in their trash such as bills, receipts, mailers from credit card companies, etc., which can be converted to forged credit cards, etc. Some of the media coverage and much advertising is not only to warn people not to do so but to instead shred such documents.[32]

For these reasons, the Court declines Defendant's request to disregard the holding in *Ranken*. Instead, for the forgoing reasons, the Court reaffirms the holding in *Ranken* and finds that Defendant had no reasonable expectation of privacy in his garbage.

---

[30] *See id.* at 860.

[31] *Ranken*, 25 A.3d at 860.

[32] *Id.*

9

## C. The State's Search Warrant Was Supported by Probable Cause

Finally, the Court considers whether the State's search warrant application and affidavit was supported by probable cause. The Fourth Amendment to the United States Constitution and Article 1, Section 6 of the Delaware Constitution, as well as Sections 2306 and 2307 of Title 11 of the Delaware Code, set forth the requirements for obtaining and executing a valid search warrant.[33]

The issuing magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit—including the veracity and basis of knowledge of persons supplying hearsay information—there is a fair probability that contraband or evidence of a crime will be found in a particular place."[34] This determination must be made on the four-corners of the affidavit in support of the search warrant.[35] Delaware employs a "totality of circumstances" analysis.[36]

A reviewing court must ensure that "the magistrate had substantial basis for concluding that probable cause existed."[37] Upon review of a magistrate's decision, the Court must pay "great deference," to the determination of probable cause, and

---

[33] *See* U.S. Const. amend. IV; *see also* Del. Const. art. I, § 6; *see also* 11 *Del. C.* §§ 2306 and 2307.

[34] *State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013) (citing *Illinois v. Gates*, 426 U.S. 213, 237 (1983)).

[35] *See id.* (citing *LeGrande v. State*, 947 A.3d 1103, 1107 (Del. 2008)); *see also Wheeler v. State*, 135 A.3d 282 (Del. 2016).

[36] *LeGrande v. State*, 947 A.3d 1103, 1107–08 (Del. 2008) (quoting *Sisson v. State*, 903 A.2d 288, 296 (Del. 2006)).

[37] *Holden*, 60 A.3d at 1114 (quoting *Illinois v. Gates*, 426 U.S. 213, 238–39 (1983)).

10

should not conduct "a *de novo* review" of the decision.[38]

In this case, Defendant raises an issue regarding the reliability of the anonymous tip provided in November 2019. The search warrant application and affidavit point to an anonymous tip issued by a confidential source. The tip indicated that Defendant was a "source of supply of cocaine[,]" that he "would walk from [his residence] to different parts of the neighborhood to deal cocaine and would also travel to local bars to deal to other patrons."[39] Defendant argues that the informant was not a past, proven and reliable informant.

This may be the case. "However, even if an informant is anonymous or the informant's reliability is unknown, probable cause requirements are met if there is sufficient independent police corroboration."[40] "It is not a requirement that a confidential source always be a past, proven reliable informant . . . ."[41] In support of its position that the probable cause requirement was met, the State points to the contents of the search of Defendant's trash as independent corroboration. As part of its demonstration of probable cause, the State, in its search warrant application and affidavit, identified the following items that were found during the search:

---

[38] *Holden*, 60 A.3d at 1114.
[39] Search Warrant Aff. at 5.
[40] *Ranken*, 25 A.3d at 863 (citing *LeGrande*, 947 A.2d at 1108; *Tatman v. State*, 494 A.2d 1249, 1251 (Del. 1985)).
[41] *State v. Rhoades*, 2011 WL 6000842, at *2 (Del. Super. Ct. Nov. 3, 2011) (citing *Tatman v. State*, 494 A.2d 1249, 1251 (Del. 1985)).

- Approximately 700 clear plastic sandwich bags with one corner that had been cut away.
- Approximately 50 plastic sandwich bag corners, or cut away tops that had a white powdery residue.
- Approximately 25 unused dryer sheets.
- Three empty sandwich bag boxes.
- Two Receipts with the name "Matthew Peart" printed on them.[42]

The affidavit indicates that the affiants' training, experience, and participation in past drug investigations allowed them to tie these items to drug dealing activity. Further, the affidavit also provides that "[t]he white powdery residue from the plastic baggies . . . field tested positive for cocaine."[43] Additionally, the affiant provided notes of physical surveillance performed.[44] Because this Court finds that the warrantless search of Defendant's trash can was legal, it also finds that using the contents of that search to independently corroborate an anonymous tip was valid. Hence, after a careful review of the totality of the circumstances, this Court finds that sufficient probable cause existed to support the issuance of the search warrant. Therefore, the Court finds that the State's search warrant application and affidavit was supported by probable cause.

---

[42] Search Warrant Aff. at 6.

[43] *Id.*

[44] *See id.* ("Physical surveillance was performed at 193 Madison Drive during the week of 12/09/2019. The Honda Accord . . . registered to Matthew Peart was observed in the driveway in the rear of the residence.").

12

## VI.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED THIS 25th day of March, 2021.**

_____

Sheldon K. Rennie, Judge

13