**SUPERIOR COURT
OF THE
STATE OF DELAWARE**

**ROBERT H. ROBINSON, JR.**
**JUDGE**

**Sussex County Courthouse
1 The Circle, Suite 2
Georgetown, DE 19947
Telephone: (302) 856-5264**

Submitted: October 21, 2021
Decided: December 6, 2021

Julie L. Johnson, DAG
Department of Justice
114 East Market Street
Georgetown, Delaware 19947

Tasha M. Stevens, Esq.
Fuqua, Willard, Stevens & Schab, P.A.
26 The Circle, P.O. Box 250
Georgetown, Delaware 19947

Re:    *State v. Jesus G. Serrano Torres,* ID No. 2003006404

Dear Counsel:

Pending before the Court are Defendant Jesus Serrano Torres' ("Torres") Motion to Suppress and Motion to Disclose Confidential Informant's Identity ("Motion to Disclose"). Because I find there was probable cause to support a warrantless seizure of Torres and the subsequent search of his vehicle, his Motion to Suppress is **DENIED**. I previously denied the Motion to Disclose but told Torres he could renew it after the hearing on the Motion to Suppress. Torres indeed renewed the motion in light of information presented at the hearing and I took it under advisement. However, I remain convinced that motion must be **DENIED**.

I conducted a hearing on Torres' Motion to Suppress on October 21, 2021. The State presented two witnesses, Detective Philip DiGati, and Detective Nicolas Ciglinsky, both members of the Governor's Task Force ("GTF"). The two detectives testified that on March 10, 2020, members of the GTF contacted a probationer—who agreed to act as a confidential informant ("CI")—at his[1] house as part of a routine home visit.[2] The CI told members of the GTF that he had recently purchased illegal drugs from an individual (the "seller") and that he could arrange to purchase more. The detectives took the CI to Delaware State Police Troop 3 for an interview. There, the CI told the detectives that he initially met the seller through the seller's business, a tow truck company, when his car broke down several months prior. During this initial interaction, the seller wrote a phone number on the back of his tow truck company's business card and gave it to the CI. The CI told the detectives that he contacted this number through text messages and phone calls and arranged several purchases of illegal drugs. He met the seller at various locations, including once in the parking lot of Bayhealth Hospital, located south of Milford, Delaware.

---

[1] The detectives did not specify the gender of the CI but I will refer to the CI as a male for ease of reference.

[2] The CI was contacted initially because of a violation of his probation. Although neither party established this at the hearing, I suspect the CI agreed to provide information because he was trying to "work off" the violation. While this fact could affect the CI's credibility, his credibility was not an issue because of the way the events unfolded.

The CI told the detectives that the seller recently moved his supply of drugs from the tow company's office to the seller's girlfriend's house.

While Det. DiGati looked on, the CI texted the number on the back of the business card inquiring about purchasing drugs. He quickly received a telephone call from the number. The CI arranged a drug deal on the call while the detective listened in. Using various slang terms for drugs, the CI initially attempted to purchase heroin, but it was unavailable, so he arranged to instead purchase seven "grams" (which the detectives believed referred to cocaine). They agreed to meet at Bayhealth Hospital in the same location where they had met before.

At the suppression hearing, the detectives acknowledged that at this point in the investigation, they did not know the identity of the seller or what vehicle he would be operating. However, they suspected it was Torres. They were familiar with the tow truck company named on the business card; knew that Torres, along with Torres' brother, were involved with the business; from a 2017 drug investigation, they were aware that Torres and his brother had sold large quantities of drugs; and the CI provided a description of a tattoo on the right side of the seller's neck that was similar to a tattoo on Torres. The CI informed the detectives that the seller typically drove an Audi to their drug deals.

Once the CI and seller concluded their conversation, members of the GTF, along with the CI, immediately responded to Bayhealth Hospital in unmarked

vehicles. The CI received texts from the seller telling the CI when he was on his way to the agreed-upon location and, later, when he was pulling into the Bayhealth parking lot. Det. Digati, who was with the CI, emphasized that he controlled the phone and monitored all communications; not only was the constant monitoring important to maintain the integrity of the investigation, but it was critical for officer safety that there were no unauthorized communications during the operation. When the CI received the text that the seller was pulling in, members of the GTF observed a dark-colored Audi pulling into the parking lot and the CI told Det. DiGati "that has to be him." The parking lot was nearly empty, and the Audi parked far from the entrance to the hospital. Det. DiGati then left the area, taking the CI with him. The CI never observed who was in the vehicle.

After the Audi parked, Det. Ciglinsky blocked it in with his unmarked vehicle. The driver, later identified as Torres, exited the vehicle and started quickly walking away. Detective Ciglinsky and other officers exited their vehicles and ordered Torres to stop, which he did. After detaining Torres, they determined his identity. The officers searched the vehicle and located cocaine in the center console.

The State and Torres agree that Torres was seized when the officers blocked his vehicle from leaving. However, Torres argues that there was not sufficient

4

probable cause to seize Torres at that time.[3] Torres contends that the police did not—and could not—corroborate the information received from the CI. Torres points out that there was no name on the back of the business card, the CI did not know what kind of car the seller would be driving that night, the CI never identified Torres, and the police acknowledged that someone other than Torres might make the delivery. Torres also argued—with rightful complaint—that the police made no efforts to preserve evidence such as screenshots of the text exchanges, recordings of the phone calls, the phone number from the back of the card, or even a copy of the business card. Furthermore, the arrest and search were not recorded. Although the unmarked vehicles the GTF officers were operating were equipped with video and audio recording devices, they did not automatically activate because the emergency lights were not used, and no one manually turned them on. These recordings are ubiquitous in police work these days and greatly assist courts in fact-finding. At the hearing, the State's witnesses had little trouble recalling conversations and events that took place over a year prior when asked questions on direct examination, but their recollections often faded on cross-examination. This disparity, along with the lack of evidence preservation, made this case closer than it needed to be.

---

[3] Torres' first of two arguments in his motion is that the facts to be considered to establish probable cause for the seizure and search were limited to those in the four corners of the arrest warrant pursuant to *McDonald v. State,* 947 A.2d 1073 (Del. 2008), but Torres withdrew that argument at the hearing in light of *Gordon v. State*, 245 A.3d 499, 514 (Del. 2021).

Delaware law enforcement officers have the authority to make a warrantless arrest when they have "reasonable ground to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed."[4] A "reasonable ground to believe" must be more than mere suspicion, and this Court has construed it to mean probable cause.[5] Probable cause is a practical, non-technical concept that must be measured by the totality of the circumstances.[6] The totality of the circumstances is "viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[7] This Court assesses the totality of the circumstances by examining if the "detaining officer had a particularized and objective basis to suspect criminal activity."[8] The State has the burden to prove that a warrantless search or seizure was justified by a preponderance of the evidence.[9] The court sits as the finder of fact, weighs the credibility of the witnesses, and determines the weight of the evidence.[10]

When assessing a confidential informant's tip, this Court must consider the reliability or veracity of the informant, the basis of the informant's knowledge, and

---

[4] 11 *Del. C.* § 1904.
[5] *Thompson v. State*, 539 A.2d 1052, 1055 (Del.1988).
[6] *Id.*
[7] *Jones v. State*, 745 A.2d 856, 861 (Del.1999) (citing *United States v. Cortez*, 449 U.S. 411 (1981)).
[8] *Jose Lopez-Vazquez v. State*, 956 A.2d 1280, 1288 (Del. 2008).
[9] *Hunter v. State*, 783 A.2d 558, 560-61 (Del. 2001).
[10] *Turner v. State*, 957 A.2d 565, 571 (Del. 2008).

"the degree to which the tip is corroborated by independent police surveillance and information."[11] The most direct way to establish an informant's basis of knowledge is by alleging that the informant is providing first-hand information.[12] The State does not argue that the person who set up the deal was a past proven reliable confidential informant. However, the CI admitted to prior drug transactions, including one that took place at Bayhealth Hospital. He then set up a drug deal while the officers monitored his communications in real-time. These real-time updates included a text stating that the seller was pulling in just as the officers observed a vehicle pulling into the nearly empty parking lot and parking far from the entrance. While the CI could not have been one-hundred percent certain that the person with whom he had dealt before, and with whom he had set up the deal with this time, was the person who pulled in, the timing of the arrival and the location where the person parked were sufficiently reliable to establish probable cause for the seizure of Torres when the police blocked in his car. For the same reasons, the police also had probable cause to search Torres' vehicle under the automobile exception to the warrant requirement.[13]

---

[11]*Valentine v. State*, 207 A.3d 566, 572 (Del. 2019) (quoting *LeGrande v. State*, 947 A.2d 1103, 1108 (Del 2008)).

[12] *Id.* at 573 (citing *Illinois v. Gates,* 462 U.S. 213, 234 (1983)).

[13] *See, e.g.*, *Tatman v. State*, 494 A.2d 1249, 1251 (Del. 1985).

Under the totality of the circumstances, the State has met its burden to establish by a preponderance of the evidence that there was probable cause to arrest Torres at the time of the seizure and to search his car.

MOTION TO DISCLOSE

Torres' motion alleges that the CI could materially aid the defense because he set up the deal and possibly witnessed many details that were lacking in the arrest warrant. I initially denied this motion because it seemed apparent that the CI fell into the first category of *Flowers* in that he was used only to establish probable cause.[14] As part of the denial, however, I permitted Torres to renew his motion depending on what was learned at the hearing. At the conclusion of the hearing, Torres renewed his motion, arguing that disclosure of the identity of the CI was even more necessary because he learned at the hearing that the officers had not preserved any evidence of how the drug transaction was set up and had trouble recalling aspects of the conversations they had with the CI. While I understand Torres' argument and share some of his concerns, I remain convinced that the CI still falls in the first *Flowers* category, which does not require disclosure and does not require further inquiry into

---

[14] In *Flowers v. State*, this Court identified four categories of situations where a confidential informant is involved in a case: "(1) the informer is used merely to establish probable cause for a search; (2) the informer witnesses the criminal act; (3) the informer participates but is not a party to the illegal transaction; and (4) the informer is an actual party to the illegal transaction." 316 A.2d 564, 567 (Del. Super. 1973). In *Butcher v. State*, the Delaware Supreme Court observed that the identity of the informer is generally protected in the first category but not in the fourth. 906 A.2d 798 (Del. 2006).

whether the CI's testimony would be material for the defense. Even if the CI might have presented a slightly different version of events, he set up a drug deal and Torres responded at the time and place agreed-upon in conversations monitored by the officers. Thus, his role did not rise above establishing probable cause.

Therefore, Torres' Motion to Suppress and Motion to Disclose are both **DENIED**.

**IT IS SO ORDERED.**

Sincerely,

*/s/ Robert H. Robinson, Jr,*

Robert H. Robinson, Jr.