**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE      )
                          )
        v.            )     ID No. 2010011141
                          )
THEODORE S. MILNER, III,   )
Defendant.             )

Date Submitted:   April 1, 2022
Date Decided:     June 8, 2022

**MEMORANDUM OPINION**

*Upon Consideration of Defendant's Motion to Suppress*: **DENIED**

Jeffrey M. Rigby, Esquire, Deputy Attorney General, Department of Justice, State of Delaware, 820 North French Street, 7th Floor, Wilmington, Delaware, Attorney for the State.

Brian J. Chapman, Esquire, Law Office of Brian J. Chapman, 300 Creek View Road, Suite 103, Newark, Delaware, 19711, Attorney for the Defendant.

Jurden, P.J.

## INTRODUCTION

Before the Court is Defendant Theodore Milner's Motion to Suppress evidence seized as a result of an alleged unlawful detention and seizure in violation of rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution, as well as Article 1, Section 6 of the Delaware Constitution. Defendant was detained shortly after New Castle County Officer Roberto Ieradi conducted a motor vehicle stop in the area of Rysing Drive and Governor Printz Boulevard in Wilmington, Delaware. For the reasons that follow, Defendant's Motion to Suppress is **DENIED**.

## FACTS

The Court finds the following facts were proven by the State. On October 23, 2020, at approximately 10:45 a.m., Officer Roberto Ieradi ("Officer Ieradi") of the New Castle County Police Department was on patrol when he saw a black Nissan Armada approach the intersection of Rysing Drive and Governor Printz Boulevard. The vehicle operator failed to signal prior to changing lanes into the left turn lane. While in the left turn lane, the vehicle operator activated the left turn indicator, and proceeded to turn left onto Rysing Drive. By activating the turn signal while in the turn lane, the vehicle operator failed to exhibit to other drivers his intention to turn

left 300 feet or more prior to turning onto Rysing Drive, in violation of 21 *Del. C.* § 4155.[1]

Upon observing the traffic violation, Officer Ieradi followed the Nissan Armada into the parking lot of a 7-11 located on the corner of Rysing Drive and Governor Printz Boulevard. Officer Ieradi activated the emergency equipment on his patrol vehicle and conducted a motor vehicle stop in the parking lot. Officer Ieradi approached the Nissan Armada from its passenger side, ultimately contacting the Defendant, Theodore Milner, the operator and lone occupant of the vehicle.

The Defendant provided Officer Ieradi his license, registration and proof of insurance. Officer Ieradi noticed a strong smell of burnt and raw marijuana emanating from the interior of the vehicle. The officer eventually informed the defendant the odor of marijuana constituted probable cause to search the vehicle and any occupant in the vehicle. The defendant admitted he had marijuana in his pocket. He was removed from the vehicle and searched. A bag of marijuana was removed from Defendant's right pants pocket.

Officer Ieradi then searched the interior of the Nissan Armada. In the glove box, he recovered a SCCY nine millimeter semiautomatic handgun loaded with six

---

[1] Title 21, Section 4155(b) of the Delaware Code, provides:
**§ 4155. Turning movements and required signals.**
    (b) A signal of intention to turn or move right or left when required shall be given continuously during not less than the last 300 feet or more than $^{1}/_{2}$ mile traveled by the vehicle before turning.

rounds of ammunition, and a Smith & Wesson .40 caliber semiautomatic handgun loaded with fourteen rounds of ammunition. An additional Smith & Wesson magazine, loaded with fourteen rounds of ammunition, was found in the rear of the SUV.

On July 6, 2021, the New Castle County Grand Jury indicted the Defendant for two counts of Possession of a Firearm by a Person Prohibited, in violation of 11 *Del. C.* § 1448.[2]

## PARTIES' CONTENTIONS

On November 16, 2021, Defendant filed a Motion to Suppress, asserting that Officer Ieradi executed a warrantless search of Milner's vehicle without probable cause to believe the automobile "was carrying contraband or contained evidence of criminal activity."[3] Defendant claimed that any search of the vehicle beyond the initial purpose of the traffic stop constituted "a separate seizure which was not supported by independent facts sufficient to justify the additional intrusion and extension of the initial traffic stop."[4]

---

[2] On October 23, 2020, the Defendant was arrested for two counts of Possession of a Firearm During the Commission of a Felony (in violation of 11 *Del. C.* § 1447A), two counts of Possession of a Deadly Weapon by a Person Prohibited (in violation of 11 *Del. C.* § 1448(a)(1)), two counts of Possession of a Deadly Weapon while in Possession of a Controlled Substance (in violation of 11 *Del. C.* § 1448(a)(9)), one count of Possession of Firearm Ammunition by a Person Prohibited (in violation of 11 *Del. C.* § 1448), one count of Possession with Intent to Deliver Marijuana (in violation of 16 *Del. C.* § 4754), and Failure to Signal Continuously 300 or more Feet from a Turn (in violation of 21 *Del. C.* § 4155(b)).

[3] Defendant's Motion to Suppress, ¶ 10.

[4] *Id.*, ¶ 11.

4

At the conclusion of the suppression hearing on April 1, 2022, Defendant argued Officer Ieradi lacked reasonable articulable suspicion that Defendant committed a violation of 21 *Del. C.* § 4155(b), but even if the Court concluded the officer possessed reasonable articulable suspicion for the traffic stop, the odor of marijuana alone did not provide probable cause to search the vehicle. Defendant maintains that any connection between the traffic violation and the odor of marijuana is tenuous at best, and the suppression hearing testimony failed to establish probable cause to "presume there was contraband or marijuana in the vehicle." Based on the totality of the circumstances, Defendant contends the officer did not demonstrate probable cause to justify a search of the vehicle, and the evidence is subject to suppression.

The State contends it had established by a preponderance of the evidence probable cause supporting the vehicle stop – that Officer Ieradi saw the Defendant violate Delaware's traffic laws by failing to indicate his intention to turn 300 or more feet prior to turning left onto Rysing Drive, in violation of 21 *Del. C.* § 4155(b).[5]

The State also argues, pursuant to *Houston v. State*,[6] that the extension of the initial vehicle stop was justified due to the officer's detection of an odor of marijuana emanating from the vehicle.[7] Finally, the State claims that the police developed

---

[5] State's March 29, 2022 Response to Defendant's Motion to Suppress, ¶ 10.
[6] *Houston v. State*, 251 A.3d 102, 109 (Del. 2021).
[7] State's March 29, 2022 Response to Defendant's Motion to Suppress, ¶ 16.

probable cause to conduct a warrantless search of the vehicle pursuant to the automobile exception.[8]  Relying on *Valentine v. State*,[9] the State contends that the officer's detection of odor of burnt and raw marijuana under these circumstances constitutes probable cause to search the vehicle for contraband.

## DISCUSSION

The United States and Delaware Constitutions protect the right of persons to be secure from unreasonable searches and seizures.[10]  When considering a motion to suppress evidence in a warrantless search or seizure, the State bears the burden of proving that a police officer possessed reasonable suspicion that the operator of a motor vehicle has committed a violation of law, including a traffic offense.[11]  As the Court recently noted in *Skates v. State*,[12]

> A determination of reasonable suspicion is 'evaluated in the context of the totality of the circumstances to assess whether the detaining officer had a particularized and objective basis to suspect criminal activity.' The totality of the circumstances is 'viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts.'  Thus, when determining whether reasonable suspicion exists to justify a detention, the court 'defers to the experience and training of law enforcement officers.'[13]

---

[8]  *Id.*, ¶ 17.
[9]  *Valentine v. State*, 207 A.3d 166, 167 (Del. 2019).
[10] *Flonnory v. State*, 109 A.2d 1060, 1063 (Del. 2015) (citing U.S. Const. Amend. IV; Del. Const. art. I, Section 6).
[11] *Houston v. State,* 251 A.2d at 108-09, citing *State v. Prouse*, 392 A.2d 1359, 1364 (Del. 1978), *aff'd* 440 U.S. 648 (1979).
[12]  *Skates v. State*, 2021 WL 3929551 (Del. Super. Sept. 2, 2021) (citations omitted).
[13]  *Id.* at *2, quoting *Jose Lopez-Vazquez v. State*, 956 A.2d 1280, 1288 (Del. 2008), *Uriel Harris v. State*, 806 A.2d 119, 127 (Del. 2002), *Josiah Woody v. State*, 765 A.2d 1257, 1263 (Del. 2001).

Further, while warrantless searches and seizures are *per se* unreasonable, in certain circumstances "the police may search a car without a warrant if they have probable cause to believe that the car contains contraband or evidence of criminal activity."[14] Under the automobile exception to the warrant requirement, the police must have probable cause to believe that an automobile is carrying contraband or evidence of a crime.[15] "Because probable cause is viewed under a totality of the circumstances analysis, the police are required to assess whether there are facts which suggest, when *those facts* are viewed under the totality of the circumstances, that there is a fair probability that the defendant has committed a crime."[16]

Based upon the totality of the circumstances, Officer Ieradi, the sole suppression hearing witness, possessed probable cause to conduct a traffic stop for a violation of 21 *Del. C.* § 4155(b). The officer's uncontroverted testimony established he had a clear view of the intersection when the Nissan Armada failed to signal before entering the left turn lane, and once the Defendant activated the left turn signal, the Defendant failed to exhibit his intention to do so to other motorists not less than the last 300 feet or more prior to turning onto Rysing Drive. While Officer Ieradi, seventeen months after Defendant's arrest, could not recall the

---

[14] *Valentine v. State*, 2019 WL 1178765 at *2 (Del. Mar. 12, 2019), citing *Tann v. State*, 21 A.3d 23, 27 (Del. 2011), *Prouse*, 382 A.2d at 1363.
[15] *Skates*, 2021 WL 3929551 at *2, citing *Tatman v. State*, 494 A.2d 1249, 1251 (Del. 1985).
[16] *Id.*

specific location of his police vehicle when he saw the traffic violation, or recall whether he was in front of or behind the Nissan Armanda, the officer credibly offered specific testimony regarding his observations of the Defendant's lane change, late activation of the turn signal, and the vehicle's turn onto Rysing Drive.

Defendant next claims the officer improperly extended the length and duration of the stop, and the odor of marijuana, under these circumstances, did not establish probable cause to search the vehicle. At the suppression hearing, the State admitted into evidence, without objection, Officer Ieradi's bodycam video which recorded the officer's interactions with Defendant during the October 23, 2020 vehicle stop.[17] In the video, the officer initially approached the passenger side of the Nissan Armada. The Defendant partially lowered the vehicle's passenger side window to speak to the officer, and a short time later, upon a request of the officer, Defendant fully lowered the passenger side window. Within approximately three minutes, Defendant produced his license, vehicle registration and insurance paperwork. Based upon the registration documentation, the officer asked the Defendant, a Delaware resident, why the vehicle had Pennsylvania temporary tags.[18] Less than a minute later, the officer asked Defendant the following questions: Was there a reason the vehicle

---

[17] *State v. Theodore S. Milner*, Case No. 2010011141, April 1, 2022 Suppression Hearing, State's Exhibit 1.

[18] Based upon a review of the bodycam video, Defendant had a Delaware driver's license, but the vehicle had Pennsylvania temporary tags and was registered to Defendant at a Pennsylvania address. Under the circumstances, the officer questioned the legitimacy of the temporary tag on the vehicle.

smelled like weed? Did the defendant smoke marijuana? Did the Defendant's friends smoke marijuana in the vehicle? These questions were based on the officer's conclusion that marijuana had been consumed in the vehicle.

The Defendant told the officer he had just smoked a "black and mild" cigar. The officer told Defendant he was not asking about someone smoking a "black and mild" cigar, and noted a distinction between the smell of burnt marijuana and the odor of a burnt cigar. The officer told the Defendant he asked about marijuana consumption because the vehicle "smells like weed." The officer suggested to Defendant that perhaps the odor of marijuana could have come from somebody else sitting in the car. In response, Defendant flatly denied that the vehicle smelled like marijuana and denied smoking marijuana. Based on the context of the interaction between the officer and the Defendant up to this point, which took less than five minutes, the officer was asking Defendant about an odor of burnt marijuana (i.e., someone consuming marijuana in the vehicle) emanating from the vehicle.

The officer returned to his patrol vehicle, expressing concern over the legitimacy of the Pennsylvania temporary registration tag. Shortly thereafter, the officer returned to Defendant's vehicle, informing the Defendant that the odor of marijuana was probable cause to search the vehicle. Defendant then admitted he possessed marijuana, and Officer Ieradi recovered a bag of suspected marijuana from

9

Defendant's pocket. At this point, Defendant was detained, and the officer began to search the interior of vehicle.

As the Delaware Supreme Court observed in *Valentine v. State*, "[m]arijuana was, and remains, contraband subject to forfeiture." More importantly, however, was the Court's observation that "[u]se or consumption of marijuana in a moving vehicle is a misdemeanor." Title 16, Section 4764 of the Delaware Code provides:

> Any person who knowingly or intentionally uses or consumes up to a personal use quantity of a controlled substance or a counterfeit controlled substance classified in § 4714(d)(19) of this title in an area accessible to the public or in a moving vehicle, except as otherwise authorized by this chapter, shall be guilty of an unclassified misdemeanor and be fined not more than $200, imprisoned not more than 5 days, or both.[19]

Based upon the totality of the circumstances, the Court concludes Officer Ieradi possessed probable cause to conduct a warrantless search of Defendant's person and vehicle. The officer observed two motor vehicle signal infractions prior to conducting the vehicle stop. Upon initial contact with the officer, Defendant only partially lowered his passenger side window. When asked about the odor of marijuana, Defendant denied the vehicle smelled like marijuana and suggested that what the officer smelled was a Black and Mild cigar Defendant claimed to have just smoked in the vehicle. A short time later, the Defendant admitted possessing marijuana in his pocket. He was the sole occupant of a vehicle emitting an odor of

---

[19] 16 *Del. C.* § 4764(d).

burnt marijuana, denied that the vehicle smelled like burnt marijuana, and ultimately admitted to possessing marijuana. Evaluated in the context of the totality of the circumstances, there existed a fair probability that Defendant had consumed marijuana while operating the vehicle, in violation of 16 *Del. C.* § 4764.[20]

Defendant argues that this case is analogous to *State v. Cornelius*.[21] *Cornelius* also involved an alleged violation of 21 *Del. C.* § 4155(b) to justify the initial detention of the defendant, which was followed by a warrantless search of the defendant's vehicle. Ultimately, the Court in *Cornelius* suppressed all evidence seized from Cornelius' vehicle. The Court finds Defendant's reliance on *Cornelius* is misplaced. In *Cornelius*, officers working in the City of Wilmington with the Safe Streets Task Force claimed to have observed the defendant commit a violation of 21 *Del. C.* § 4155(b), the same motor vehicle violation observed by Officer Ieradi. But, from the outset in *Cornelius*, the State failed to establish the defendant committed a traffic violation justifying his detention. Specifically, the Court concluded, "[t]here was not enough information provided by the State such as when the officers first started following Mr. Cornelius's car, how far they followed him and what [the officer's] observed to determine whether he violated 21 *Del. C.* § 4155(b)."[22]

---

[20] The odor of burnt, or consumed, marijuana is indicative that a person had, in fact, consumed marijuana in the vehicle.
[21] *State v. Cornelius*, 2021 WL 2879889 (Del. Super. July 8, 2021).
[22] *State v. Cornelius,* 2021 WL 2879889 at *4.

11

Beyond this obvious defect, the State failed to produce evidence at the suppression hearing regarding whether the officers smelled the odor of raw or burnt marijuana, except to note the officers saw marijuana leaves on a door handle panel of Cornelius' vehicle.[23]   In the end, the Court found the State failed to establish probable cause to justify a search of Cornelius' vehicle.  The basis for this conclusion was the Court's view that the testimony was not credible. The Court noted the State's evidence "on numerous occasions during the [suppression] hearing[] was contradicted. Important information was lacking because details were not provided."[24]  The lead detective in *Cornelius* contradicted his sworn testimony on several occasions, and the detective "was unsure about whether Mr. Cornelius was smoking marijuana, possessed marijuana, or had been driving under the influence of marijuana."[25]  The Court in *Cornelius* concluded the State did not establish probable cause because the odor or presence of marijuana in the car was "misstated," in that it "didn't exist."[26]

The reliability and credibility issues present in *Cornelius* are not present here. Officer Ieradi specifically established in detail the Defendant's failure to signal in violation of 21 *Del. C.* § 4155(b), and his testimony was consistent and

---

[23] *Id.*, at *2-3.
[24] *Id.*, at *4.
[25] *Id.*, at *2.
[26] *Id.*, at *5.

uncontroverted. Officer Ieradi's interactions with the Defendant are memorialized by bodycam video, including the dialogue between them regarding the odor of marijuana coming from the vehicle.

## CONCLUSION

Based upon the totality of the circumstances, the Court concludes the vehicle stop for a violation of 21 *Del. C.* § 4155(b) was supported by probable cause. Thereafter, Officer Ieradi smelled burnt and raw marijuana emanating from the vehicle as Defendant lowered his passenger side window to speak to the officer. Upon receiving Defendant's license, vehicle registration and insurance paperwork, the officer questioned Defendant about the odor of burnt marijuana coming from the interior of the vehicle. To the extent the traffic stop was extended, as argued by Defendant, the police officer developed facts independent of the traffic stop to justify the additional intrusion and extension of the stop. And, based upon the totality of the circumstances, Officer Ieradi had probable cause to conduct a warrantless search of the interior of the vehicle pursuant to the automobile exception. For the foregoing reasons, Defendant's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED**.

_____
/s/ Jan R. Jurden
Jan R. Jurden, President Judge

14